UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| NATIONSTAR MORTGAGE, LLC,<br><br>　　　　　　　　　　Plaintiff,<br>v.<br><br>AUGUSTA BELFORD AND ELLINGWOOD HOMEOWNERS ASSOCIATION, et al.,<br><br>　　　　　　　　　　Defendant. | Case No. 2:15-cv-01705-MMD-PAL<br><br>ORDER<br><br>(Mot Prot Ord – Dkt. #42)<br>(Mot Prot Ord – Dkt. #43)<br>(Counter Mot Compel – Dkt. #52) |

The court held a hearing on Nationstar Mortgage, LLC's Motion for Protection from the Deposition Notice of Rule 30(b)(6) Witnesses (Dkt. #42), SFR Investment Pool 1, LLC's Motion for Protective Order Relating to Rule 30(b)(6) Deposition of SFR Investments Pool 1, LLC (Dkt. #43) and SFR's Countermotion to Compel (Dkt. #52). The court has considered the moving and responsive papers, as well as the arguments of counsel at the hearing. Donna Wittig appeared on behalf of Nationstar, Diana Ebron and Karen Hanks appeared on behalf of SFR Investments Pool 1, LLC, and Megan Hummell appeared on behalf of Augusta Belford and Elingwood Homeowners Association.

**I.　　Nationstar's Motion for Protective Order.**

Nationstar's Motion for Protective Order (Dkt. #42) argues that SFR's Rule 30(b)(6) deposition notice topics are overbroad, irrelevant, and that written discovery is a more appropriate mechanism to obtain the same information. Additionally, Nationstar argues that the Rule 30(b)(6) designee's principle place of business is in Dallas, Texas, and that the deponent should not be required to travel to Nevada. Counsel proposes that the deposition take place in Dallas if the court orders a Rule 30(b)(6) deposition to proceed, or alternatively, that the witness appear by video. SFR opposed the motion and filed a countermotion to compel Nationstar and

the Bank Defendants to respond to Request for Production of Document Nos. 1, 4, 9, 16, and 17, and/or to produce a privileged document log with respect to any documents withheld on the basis of attorney-client work product or other privilege.

As the parties' disputes involve, in part, the adequacy of the Bank Plaintiff/Counterdefendants' responses to SFR's discovery requests, and the response to the countermotion to compel is not due until June 13, 2016, the court will defer decision on Nationstar's motion for protective order until resolving the underlying written discovery response disputes.

## II.   SFR's Motion for Protective Order

SFR's Motion for Protective Order (Dkt. #43) involves a dispute over Nationstar's Rule 30(b)(6) topic No. 10.  It requests:

SFR's corporate structure, from 2012 to the present, including:

a. The identity and location of SFR's principals, managers, members, officer and investors;

b. The identity and location of SFR's parent or subsidiary corporations and affiliates, and the principals, managers, members, officers and investors of those entities;

c. The identity of any wholly or partially owned subsidiary of SFR as well as any company or corporation over which SFR expects control or otherwise participates, or has participated in the management or direction of SFR investors;

d. The identity of SFR's sources of operating capital;

e. The content and application of SFR's Operation Agreement(s) and Articles of Incorporation from 2012 to present.

Counsel for SFR has previously sought and obtained protective orders in both state court and this federal district on the same subject matter.  Protective orders have been granted by Magistrate Judge Koppe, the undersigned, State Discovery Commissioner Bonnie Bulla, State Discovery Commissioner Chris Beecroft, Jr., and District Judge Boulware.  SFR argues that the broad categories of information sought are not relevant to the issue of whether it was a bona fide purchaser at the HOA sale.  Additionally, while the bank claims it needs the information about the parent entities' knowledge about the HOA sale, SFR has no control or authority over these

1  entities, and the broad requests for information are burdensome.  SFR has given deposition
2  testimony in multiple cases "countless times" about its knowledge regarding facts and
3  circumstances surrounding HOA sales.  It was SFR which attended the sale in this case and
4  researched the property, and has previously testified that it was aware of risk of litigation
5  because bank/lenders were disputing whether their respective deeds of trust were extinguished.
6  Additionally, SFR's representative will testify in this case that it is not aware of any pre-sale
7  disputes that may have occurred between the bank and the HOA or its collection company prior
8  to sale.  Under these circumstances, Topic 10 is nothing more than a fishing expedition and a
9  protective order should be entered.

10  Nationstar opposes the motion asserting the discovery sought is relevant to the issue of
11  whether SFR is a bona fide purchaser because this depends, at least in part, on the sophistication
12  of its owners and operators.  Nationstar relies on the Nevada Supreme Court's recent decision in
13  *Shadow Wood Homeowners Ass'n v. New York Cmty. Bancorp, Inc.,* 132 Nev. Ad. Op. 5 366
14  P.3d 1105 (2016) to support its position the discovery is relevant.  In *Shadow Wood*, the Nevada
15  Supreme Court indicated that a parties' status as a bona fide purchaser is a factor a court sitting
16  in equity should balance and observed that actual, constructive, and inquiry notice bears on a
17  party's bona fide purchaser status.  Additionally, Adam Bailey, a former SFR employee,
18  executed an affidavit March 7, 2016, identifying David and Barbara Rosenberg as the ones who
19  created and funded SFR and ultimately rearranged the company's corporate structure.  A copy of
20  the affidavit is attached as Exhibit A to the Opposition.  If Mr. Bailey's information is correct,
21  the Rosenbergs' personal knowledge and sophistication as real estate investors bears on the bona
22  fide purchaser analysis.  SFR's current manager, Chris Hardin, responded to the Bailey affidavit
23  with a declaration of his own, a copy of which is attached as Exhibit B.  Mr. Hardin's declaration
24  impugns Mr. Bailey's credibility and knowledge, but fails to refute a number of Bailey's
25  statements.

26  Nationstar also argues that the prior protective orders on the same topic were obtained
27  prior to *Shadow Wood* and Mr. Bailey's "whistle-blowing affidavit."  Additionally, Judge
28  Hoffman denied SFR's motion for protective order on the exact topic at issue less than two

1  weeks ago.  A state district court judge also recently overturned a pre-*Shadow Wood* protective
2  order recommended by a discovery commissioner, finding the inquiry into SFR's operations,
3  ownership and status is now in play in light of *Shadow Wood*.

4       Mr. Hardin was deposed in a state court case in one of hundreds of properties owned by
5  SFR involved in quiet title litigation.  He testified that he did not know who the owners of SFR
6  were and that he reported to Attorney Howard Kim.  He also testified that Mr. Kim was the only
7  source of information about who the investors were.  The state court permitted Mr. Kim's
8  deposition to proceed based on Mr. Hardin's testimony.  Mr. Kim was deposed on February 25,
9  2015, and contradicted Mr. Hardin.  Specifically, Mr. Kim testified that he has no knowledge of
10 when SFR was formed and no knowledge of who formed it.  He also testified that he did not hire
11 Hardin, despite Hardin's sworn testimony to the contrary, and that he did not know who hired
12 Mr. Hardin. However, Mr. Kim testified he recommended Mr. Hardin to Dave Rosenberg.  Mr.
13 Kim believed that Dave Rosenberg was in-house counsel for SFR.  Mr. Kim also testified that he
14 controls a trust account for SFR, transfers money to Hardin, and has no knowledge about the
15 funds in the trust account.

16      Nationstar also cites testimony of Mr. Kim that he did not know who formed SFR's
17 parent company and that his law firm was not involved in the formation of SFR Investments, Inc.
18 Public records including SFR Investments, LLC's Articles of Organization list David A. Tilem
19 as the original managing member with an address at 400 N. Stephanie Street in Henderson,
20 Nevada -- the address of Kim's law firm.  Mr. Tilem is a bankruptcy attorney, and sits on the
21 board of at least one HOA.  Mr. Rosenberg and Mr. Kim are bankruptcy attorneys and trustees.
22 Additionally, a deposition of Paulina Kelso, a 30(b)(6) representative for SFR, was taken.  Ms.
23 Kelso testified that to her knowledge, David Rosenberg was not employed by SFR investment
24 Pool 1, LLC, is not in-house counsel, and other than acting as an attorney, has no other role with
25 SFR Investment Pool 1, LLC.

26      Nationstar maintains that *Shadow Wood* has changed the landscape and that courts are
27 now required to consider the totality of the circumstances in HOA quiet title actions.  Among the
28 circumstances the Nevada Supreme Court found were relevant were the "status and action in all

1  parties involved" in deciding whether to set aside an HOA sale on equitable grounds. The
2  Nevada Supreme Court identified a party's bona fide purchaser status as one of the factors to
3  consider in evaluating the fairness of the transaction and conducting the required equitable
4  balancing test. Topic 10 is targeted to determine SFR's bona fide purchaser defense. Topic 10
5  seeks testimony on SFR's corporate structure, including the identity of its principals, managers,
6  members, officers, and investors, as well as information on the identity and role of what
7  Nationstar understands to be the corporate shells involved in SFR's business. It also seeks
8  information on the identity of SFR's sources of operating capital and the content of its operation
9  agreements and Articles of Incorporation from 2010, to the present. All of this information is
10 important in light of *Shadow Wood*'s instruction to the trial courts to develop the facts and
11 examine the entirety of the circumstances that bear on the equities, including considering the
12 status and actions of all parties involved, and whether an innocent party may be harmed by
13 granting the desired relief.

14  SFR replies that the Bank already knows from previous depositions of SFR Pool that it is
15 owned by SFR Investments, LLC, and that SFR Investments is owned by SFR Funding, LLC, a
16 Delaware LLC. The Bank already knows that SFR Pool has never known who the manager of
17 that entity is. Contrary to the Bank's arguments, knowledge of the parent entities is not
18 attributed to SFR Pool because SFR Pool is a manager-managed LLC rather than a member-
19 managed LLC. Chris Hardin is the sole manager and does not seek input from any other entity.
20 SFR Pool has a legal right to conduct its business how it desires, and if it chooses to put full faith
21 and power in Chris Hardin, it is entitled to do so. Because the individual members have no say
22 in the day-to-day operations of SFR Pool and have lawfully used the protections afforded under
23 the law to remain anonymous, this discovery should not be allowed because knowledge of a
24 member of a manager-managed LLC cannot be imputed to the LLC, absent an alter-ego claim or
25 an attempt to pierce the corporate veil. For these reasons, this topic is not aimed at determining
26 SFR Pool's bona fide purchaser status and the court should issue the protective order.

27 / / /

28 / / /

**DISCUSSION**

SFR Pool 1, LLC is a closely held corporation which was recently required to disclose the citizenship of each of its members in response to an order to show cause issued in aid of the court's determination of whether it had diversity jurisdiction in this case. In Case No. 2:15-cv-00218-KJD-NJK, SFR Investment Pool 1, LLC filed a certificate of interested parties indicating that the following entities have an interest in the outcome of that case:

1. SFR Investment Pool 1, LLC, a wholly owned subsidiary of SFR Investments LLC. SFR Investment, LLC is a Nevada limited liability company.
2. SFR Investment, LLC is wholly owned by SFR Funding, LLC. SFR Funding, LLC is a Delaware limited liability company.
3. SFR Funding, LLC is wholly owned by Xiemen Limited Partnership. Xiemen Limited Partnership is a Canadian entity.
4. Xiemen Limited Partnership is comprised of two partners, Xiemen Investments, Ltd., and John Gibson.
5. Xiemen Investments, Ltd., a Canadian corporation and John Gibson is domiciled in South Africa.
6. No publicly held corporation owns more than ten percent of Xiemen Investments, Ltd.

*See* Certificate of Interested Parties, Case No. 2:15-cv-00218-KJD-NJK (Dkt. #52)

Nationstar has presented substantial evidence supporting its claim that the people who actually control SFR Investment Pool 1, LLC, and make decisions concerning properties acquired are other than its purported managing agent, Chris Hardin. The conflicting testimony given in other HOA foreclosure/quiet title acquisitions by Mr. Kim, Mr. Hardin, and Ms. Kelso, coupled with Mr. Bailey's declaration, and Mr. Hardin's countering declaration, persuade the court that the discovery sought by Topic 10 is discoverable in light of the Nevada Supreme Court's recent decision in *Shadow Wood*. Mr. Bailey's declaration avers that he was employed by SFR Pool 1 between 2012, and 2013, regularly talked with Chris Hardin, and observed the day-to-day operation of the business, including the people who were involved in the day-to-day

1. running of the company. Exhibit A, Affidavit of Adam Bailey, ¶¶2, 3. Some of the paragraphs
2. of his affidavit are conclusory. However, other paragraphs consist of his observations, *e.g.,* that
3. David Rosenberger had an office where he conducted his bankruptcy trustee business in the same
4. place as SFR Pool 1's office on the other side of a wall. *Id.* ¶9. David Rosenberg had a door cut
5. into the wall separating his office from SFR Pool 1's office, so he could easily walk between the
6. two offices. *Id.* Chris Hardin reported to David Rosenberg, Barbara Rosenberg, and Howard
7. Kim. *Id.* ¶10. Howard Kim and Chris Hardin would talk about what properties they would try to
8. buy at foreclosure sales. *Id.* ¶12.

The declaration of Chris Hardin in response to Mr. Bailey's affidavit is remarkable for what it does not say. Essentially, Mr. Hardin relates the circumstances of Mr. Bailey's termination and allegations that he stole money from SFR Pool, and swindled tenants. Chris Hardin Declaration, Exhibit B. Hardin's declaration claims that David Rosenberg's role with SFR Pool is as its legal counsel, and that Howard Kim's role with SFR Pool is as its legal counsel. *Id.* ¶¶7, 8. Hardin's declaration does not controvert Bailey's affidavit regarding the location of David Rosenberger's office or regular communications between Rosenberg and SFR Pool 1, or allegations that Hardin reported to David Rosenberg, Barbara Rosenberg, and Howard Kim. Similarly, the Hardin declaration does not controvert Bailey's affidavit attesting that Kim and Hardin talked about what properties they would try to buy at foreclosure sales.

In *Shadow Wood*, the Nevada Supreme Court reversed the trial court's grant of summary judgment in favor of the Bank finding that there were material issues of fact that required full development of the record and fact finding. Specifically, the Nevada Supreme Court found that material questions of fact remained concerning whether the Bank demonstrated sufficient grounds to justify the district court setting aside *Shadow Wood*'s foreclosure sale. The court reiterated that inadequacy of the sales price was not sufficient to invalidate a foreclosure. 366 P.2d at 1112. Rather, a common interest community association's non-judicial sale may be set aside upon a showing of grossly inadequate price plus fraud, unfairness or oppression. *Id.* at 1110. In addition, the court emphasized that a quiet title action is an equitable one. A court

1  sitting in equity must consider the totality of the circumstances that bear on the equities. *Id.* at
2  1114.

3   The question of whether an HOA foreclosure purchaser is an innocent purchaser who
4  took the property without any knowledge of the pre-sale dispute between the Bank and the HOA
5  is a question of fact to resolve in weighing a request for equitable relief. *Id.* A subsequent
6  purchaser is a bona fide purchaser under common law principles: 1) if it takes the property for
7  valuable consideration; 2) and without notice of prior equity; 3) and without notice of facts upon
8  which diligent inquiry would be indicated; 4) and from which notice would be imputed to him, if
9  he failed to make such inquiry. *Id.* (internal citations and quotations omitted.) When an HOA
10 foreclosure sale complies with the statutory foreclosure rules, as evidenced by the recorded
11 notices, and without any facts to indicate to the contrary, the purchaser would only have "notice"
12 that the former owner had the ability to raise a post-sale equitably-based challenge, the basis of
13 which is unknown to the purchaser. *Id.* It is not enough to show the purchaser took the property
14 with notice of potential future disputes over title. *Id.* at 1116. Additionally, courts sitting in
15 equity must consider the harm to the purchaser in evaluating the equitable relief requested. *Id.*

16   In short, given the Nevada Supreme Court's decision in *Shadow Wood* and substantial
17 questions raised about whether SFR Pool 1 is actually operating as a manager-managed LLC, the
18 court concludes, on this record, that Nationstar is entitled to information from SFR Pool 1,
19 LLC's parent companies, including SFR Investments, LLC, SFR Funding, LLC, and Xiemen,
20 LP. SFR Investment Pool 1, LLC claims it has no control over the parents and cannot compel
21 the parents to cooperate. It may or may not have the ability to require cooperation from its
22 parent entities. However, the court certainly does. If SFR Investments Pool 1, LLC is unable to
23 obtain the necessary information to answer the subject matter of Topic 10 in dispute in this
24 motion the court will grant Nationstar leave to conduct discovery directly from the entities who
25 do.

26   **IT IS ORDERED** that:

27   1. SFR Investment Pool 1, LLC's Motion for Protective Order relating to Rule 30(b)(6)
28    Deposition (Dkt. #43) is **DENIED.**

2. A decision on Nationstar's Motion for Protective Order (Dkt. #42) is **DEFERRED** until completion of briefing on SFR's Countermotion to Compel (Dkt. #53).

3. A hearing on the Countermotion to Compel (Dkt. #53) and a status check concerning denial of SFR's otion for protective order is scheduled for **2:00 p.m., June 28, 2016**, in Courtroom 3B.

DATED this 6th day of June, 2016.

PEGGY A. LEEN
UNITED STATES MAGISTRATE JUDGE