UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| NATIONSTAR MORTGAGE LLC,<br><br>                              Plaintiff,<br>      v.<br><br>AUGUSTA BELFORD AND<br>ELLINGWOOD HOMEOWNERS<br>ASSOCIATION; SFR INVESTMENTS<br>POOL 1, LLC; DOE INDIVIDUALS 1-X,<br>inclusive, and ROE CORPORATIONS 1-<br>X, inclusive,<br><br>                              Defendants. | Case No. 2:15-cv-01705-MMD-PAL<br><br>ORDER |

## I.    SUMMARY

This dispute arises from the foreclosure sale of property to satisfy a homeowners' association lien. Before the Court are Plaintiff Nationstar Mortgage, LLC's ("Nationstar") motion for partial summary judgment (ECF No. 120) as well as Defendant SFR Investments Pool 1, LLC's ("SFR") motion to strike the amended complaint (ECF No. 113), motion for summary judgment (ECF No. 114), and motion to strike Nationstar's motion for summary judgment (ECF No. 127). The Court has reviewed the various responses and replies thereto (ECF Nos. 116 118, 121, 128, 129, 134, 135, 136). The Court grants Nationstar's motion for summary judgment based on Nationstar's tender of the superpriority amount and denies the remaining motions as moot.

## II.    BACKGROUND

The following facts are undisputed unless otherwise indicated.

Gertrude and Carleen Gregorio ("Borrowers") financed the purchase of a Las Vegas property ("Property") within Augusta Belford and Ellingwood Homeowners Association ("HOA") with a $243,100 loan ("Loan") from Alliance Bancorp. in 2007. (*See*

ECF No. 120 at 3.) The Loan was evidenced by a note ("Note") and secured with a first deed of trust ("DOT") against the Property. (*See id.*) The DOT names Mortgage Electronic Registration Systems, Inc. ("MERS") as the initial beneficiary. (*Id.*; ECF No. 114 at 5.)

MERS assigned the DOT to Bank of America, N.A. ("BANA") in 2011. (ECF No. 120 at 3 (citing ECF No. 120-2 at 2-3).) BANA assigned the DOT to HSBC Bank USA, National Association, as Trustee for the Holders of Deutsche ALT-A Securities Mortgage Loan Trust, Mortgage Pass-Through Certificates Series 2007-AR3 ("HSBC") in 2013. (*Id.* (citing ECF No. 120-3 at 2-3).) HSBC then assigned the DOT to Nationstar in 2014. (*Id.* (citing ECF No. 120-4 at 2-3).)

The Borrowers failed to pay HOA assessments and the HOA recorded the following notices through its agent, Nevada Association Services, Inc. ("NAS"): (1) notice of delinquent assessment lien in October 2008; (2) notice of default and election to sell in December 2008; and (3) notice of foreclosure sale in 2009. (*Id.* at 4.)

BANA sent a letter ("First Letter") to NAS asking it to identify the superpriority amount of the HOA's lien on January 25, 2010. (*Id.* at 5.) The HOA provided an account statement in response through NAS. (*Id.*) BANA calculated the nine-month superpriority amount as $540 based on the $180 quarterly assessments itemized on the ledger and tendered that amount to NAS by check ("Check") on April 22, 2010, accompanied by a letter ("Second Letter"). (*Id.*) NAS rejected the payment.[1] (*Id.*)

The HOA recorded a second notice of foreclosure sale in February 2013. (*Id.*) The HOA foreclosed on March 8, 2013 ("HOA Sale"), and SFR purchased the Property for $10,100. (*Id.*)

Nationstar filed its initial complaint on September 4, 2015, asserting the following claims: (1) quiet title/declaratory judgment against SFR; (2) breach of NRS § 116.1113 against the HOA; (3) wrongful foreclosure against the HOA; and (4) injunctive relief against

///

---

[1]SFR argues that Nationstar has produced insufficient evidence to show that NAS received or rejected the letters and Check. (ECF No. 128 at 4, 12.) The Court addresses this contention *infra* Section IV(B).

SFR. (ECF No. 1 at 1, 7-13.) The HOA moved to dismiss the initial complaint (ECF No. 13), and the Court granted the motion after holding a hearing (ECF No. 61).

Nationstar filed its First Amended Complaint ("FAC") on February 13, 2017, asserting only two claims: (1) quiet title/declaratory judgment against SFR; and (2) injunctive relief against SFR. (ECF No. 70 at 1, 6-11.) In the prayer for relief, Nationstar primarily requests a declaration that SFR purchased the Property subject to Nationstar's DOT. (*See id.* at 11.)

## III.    LEGAL STANDARD

"The purpose of summary judgment is to avoid unnecessary trials when there is no dispute as to the facts before the court." *Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994). Summary judgment is appropriate when the pleadings, the discovery and disclosure materials on file, and any affidavits "show there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986). An issue is "genuine" if there is a sufficient evidentiary basis on which a reasonable fact-finder could find for the nonmoving party and a dispute is "material" if it could affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). Where reasonable minds could differ on the material facts at issue, however, summary judgment is not appropriate. *See id.* at 250-51. "The amount of evidence necessary to raise a genuine issue of material fact is enough 'to require a jury or judge to resolve the parties' differing versions of the truth at trial.'" *Aydin Corp. v. Loral Corp.*, 718 F.2d 897, 902 (9th Cir. 1983) (*quoting First Nat'l Bank v. Cities Serv. Co.*, 391 U.S. 253, 288-89 (1968)). In evaluating a summary judgment motion, a court views all facts and draws all inferences in the light most favorable to the nonmoving party. *Kaiser Cement Corp. v. Fishbach & Moore, Inc.*, 793 F.2d 1100, 1103 (9th Cir. 1986).

The moving party bears the burden of showing that there are no genuine issues of material fact. *Zoslaw v. MCA Distrib. Corp.*, 693 F.2d 870, 883 (9th Cir. 1982). Once the moving party satisfies Rule 56's requirements, the burden shifts to the party resisting the

motion to "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256. The nonmoving party "may not rely on denials in the pleadings but must produce specific evidence, through affidavits or admissible discovery material, to show that the dispute exists," *Bhan v. NME Hosps., Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991), and "must do more than simply show that there is some metaphysical doubt as to the material facts." *Orr v. Bank of Am.*, 285 F.3d 764, 783 (9th Cir. 2002) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient." *Anderson*, 477 U.S. at 252.

Further, "when parties submit cross-motions for summary judgment, '[e]ach motion must be considered on its own merits.'" *Fair Hous. Council of Riverside Cty., Inc. v. Riverside Two*, 249 F.3d 1132, 1136 (9th Cir. 2001) (citations omitted) (quoting William W. Schwarzer, *et al.*, The Analysis and Decision of Summary Judgment Motions, 139 F.R.D. 441, 499 (Feb. 1992)). "In fulfilling its duty to review each cross-motion separately, the court must review the evidence submitted in support of each cross-motion." *Id.*

## IV. NATIONSTAR'S MOTION FOR PARTIAL SUMMARY JUDGMENT (ECF NO. 120)

Nationstar argues that it is entitled to summary judgment on its quiet title/declaratory judgment claim because, among other things, BANA tendered the superpriority portion of the HOA lien. (ECF No. 120 at 7.) Nationstar relies primarily on the Nevada Supreme Court's decision in *Bank of Am., N.A. v. SFR Invs. Pool 1, LLC*, 427 P.3d 113 (Nev.), *as amended on denial of reh'g* (Nov. 13, 2018) ("*Bank of America*").

SFR argues that (1) Nationstar lacks prudential standing; (2) Nationstar adduced insufficient evidence to show that BANA delivered the Check to NAS; (3) BANA tendered less than the superpriority amount; and (4) the First Letter, Second Letter, and Check did not constitute a valid tender because they contained impermissible conditions. (ECF No. 128 at 9-14.)

///

4

The Court finds that BANA tendered the superpriority amount and preserved the DOT. Accordingly, the Court declares that SFR purchased the Property subject to Nationstar's DOT. Given that Nationstar primarily requests a declaration that its DOT survived the HOA Sale in the Complaint (*see* ECF No. 70 at 11), the Court dismisses Nationstar's remaining claims as moot. The Court addresses SFR's arguments below.

## A.  Prudential Standing

SFR implicitly challenges Nationstar's prudential standing, arguing that Nationstar has not produced sufficient evidence that it is entitled to enforce the Note and the DOT. (ECF No. 128 at 2-3.) Prudential standing "encompasses the general prohibition on a litigant's raising another person's legal rights, the rule barring adjudication of generalized grievances more appropriately addressed in representative branches, and the requirement that a plaintiff's complaint fall within the zone of interests protected by the law invoked." *Freedom Mortg. Corp. v. Las Vegas Dev. Grp., LLC*, 106 F. Supp. 3d 1174, 1179 (D. Nev. 2015) (quoting *United States v. Lazarenko*, 476 F.3d 642, 649-50 (9th Cir. 2007)). "The question of prudential standing is often resolved by the nature and source of the claim. Essentially, the standing question in such cases is whether the [statute] on which the claim [relies] properly can be understood as granting persons in the plaintiff's position a right to judicial relief." *Id.* (quoting *The Wilderness Soc'y v. Kane County*, 632 F.3d 1162, 1169 (10th Cir. 2011)).

SFR essentially argues that Nationstar lacks prudential standing because Nationstar has failed to demonstrate that it is currently entitled to enforce the DOT and Note. (See ECF No. 128 at 2-3.) Nationstar addresses the Note first, arguing that it need not show entitlement to enforce the Note in order to obtain a declaration that the DOT survived the HOA foreclosure sale. (ECF No. 134 at 2.) The Court agrees—whether Nationstar has authority to enforce the Note is irrelevant to its quiet title claim. Nationstar also addresses the DOT, arguing that it has introduced sufficient evidence—namely, the DOT and the relevant assignments—to demonstrate it is the current recorded beneficiary of the DOT. (*Id.* (citing ECF Nos. 120-2, 120-3, 120-4).) Nationstar also notes that SFR

has not produced any evidence to the contrary. (*See id.*) The Court agrees with Nationstar that there is no genuine dispute as to whether Nationstar is the current recorded beneficiary of the DOT. Accordingly, the Court rejects SFR's argument that Nationstar lacks prudential standing to pursue its quiet title/declaratory judgment claim.

## B. Evidence of Tender

Nationstar's evidence of BANA's tender consists of the following: (1) a copy of the First Letter; (2) a copy of the statement of account that NAS sent in response to the First Letter; (3) a copy of the Second Letter; (4) a copy of the Check; and (5) an affidavit by Douglas Miles ("Miles Affidavit"), the managing partner of a law firm that BANA retained to tender payments of superpriority amounts to HOAs. (ECF No. 120 at 8; ECF No. 120-10.) The Miles Affidavit purports to authenticate these documents. (ECF No. 120-10 at 2-3.) The Miles Affidavit also asserts that the law firm sent the Second Letter and Check to NAS and that NAS returned the check to the law firm. (*Id.* at 3.)

SFR argues that this evidence is insufficient to show that BANA tendered the superpriority amount to the HOA for several reasons: (1) Miles lacks personal knowledge of the delivery or method of delivery of the check; (2) Miles fails to provide proof of the alleged rejection and return of the check via runner; and (3) the business records that Miles relies upon for the basis of his testimony are unauthenticated. (ECF No. 128 at 11-12.) SFR further argues that the HOA's and NAS's Rule 30(b)(6) witnesses testified that NAS never received the Second Letter and Check. (*Id.* at 5, 12.)

Nationstar responds that the Miles Affidavit is sufficient to show that the BANA sent a check to NAS because Miles has personal knowledge of how the firm creates and maintains the business records that form the basis of his testimony. (ECF No. 134 at 9.) Nationstar also argues that SFR overstates the testimony of the HOA and NAS's Rule 30(b)(6) witnesses. (*Id.* at 11.)

The Court finds that SFR fails to raise a genuine dispute of material fact that BANA sent the Second Letter and Check to NAS and that NAS rejected and returned the Check. The Miles Affidavit is sufficient to show that the Second Letter and Check were sent to

NAS because Miles testified to this fact on the basis of his personal knowledge of the law firm's procedures for creating records of these events. (*See* ECF No. 120-10 at 2.) The Miles Affidavit is also sufficient to show that NAS rejected and returned the Check because Miles's testimony is based on an entry to that effect in the law firm's record-keeping system. (*Id.* at 17.) The Court also agrees with Nationstar that SFR overstates its evidence to the contrary. While SFR asserts that NAS's Rule 30(b)(6) witnesses testified that NAS never received the Second Letter or Check, the actual deposition testimony does not go so far and in fact tends to support the assertions in the Miles Affidavit. Mark Stone—the HOA's Rule 30(b)(6) witness—was asked whether he was "aware of any payment by the bank that was accepted by NAS or HOA," and he responded: "Not that I'm aware of, although she should have been checking that one thing. I don't know if NAS -- that's a question for NAS." (ECF No. 128-22 at 42.) Susan Moses—NAS's Rule 30(b)(6) witness— was asked whether she had "any knowledge of NAS rejecting that payment of $540," and she responded: "It probably was." (ECF No. 128-20 at 52.) Another one of NAS's Rule 30(b)(6) witnesses provided additional context: "There were hundred and hundreds of checks in which Miles Bauer sent to hundred and hundreds of our clients attempting to pay the super-priority . . . . So it's fair to say that if Rock at Miles Bauer would have sent a check for nine months only on this account, it would have been returned back to him . . . ." (ECF No. 134-2 at 9-10.)

Accordingly, the Court rejects SFR's argument that there is insufficient evidence of tender.

## C.    Amount of Tender

SFR argues that BANA's tender of $540 was insufficient because the superpriority amount consisted of three quarterly assessments of $186 totaling $558—not three quarterly assessments of $180 totaling $540 as BANA assumed. (ECF No. 128 at 4, 12.) As evidence that the quarterly assessments were $186, SFR cites to the testimony of Mark Stone. (*Id.* at 4 (citing ECF No. 120-8 at 8).) But Stone's testimony shows the opposite. When asked to identify the quarterly assessment amount based on the HOA's ledger for

the Borrowers' account (ECF No. 120-10 at 10), Stone testified that the quarterly assessment amount was $180. (ECF No. 120-8 at 8 ("[I]t looks like they had a quarterly assessment amount of $180 a quarter, if I'm reading their ledger right. This is not our ledger, so -- yeah. It says 180. 180 a month – a quarter. Excuse me.").) Nationstar's counsel then stated: "[I]t looks like there's a present rate of $180 a quarter, and it looks like a prior rate of $186 a quarter. Does that refresh your recollection as to the amount of the quarterly assessments in 2008?" (*Id.*) Stone responded: "I've only been with this company three years. So I wasn't even with it. So I'm guessing that must be correct. I mean, I have no reason to not believe it's [additional testimony not provided to Court]." (*Id.*) The ledger itself does not state when the rate changed (*see* ECF No. 120-10 at 10), and SFR provides no evidence to show when the rate changed. Thus, SFR has not carried its burden of showing a genuine issue of material fact that the quarterly assessments were $186.[2]

///

///

///

///

---

[2]Nationstar further argues that the superpriority amount consisted of only seven months of delinquent assessments—totaling $434 based on the $186 quarterly rate. (ECF No. 134 at 13.) The pre-2015 version of NRS § 116.3116(2) provided that the superpriority portion of an HOA lien was prior to a first security interest "to the extent of the assessments for common expenses . . . which would have become due . . . *during the 9 months immediately preceding institution of an action to enforce the lien*." *Bank of America*, 427 P.3d at 117 (emphasis added) (quoting pre-2015 version of NRS § 116.3116(2)). And the Nevada Supreme Court has held that a party institutes "proceedings to enforce the lien" for purposes of NRS § 116.3116(6) when it provides the notice of delinquent assessment. *Saticoy Bay LLC Series 2021 Gray Eagle Way v. JPMorgan Chase Bank, N.A.*, 388 P.3d 226, 231 (Nev. 2017) ("*Gray Eagle*"). While the court in *Gray Eagle* addressed the initiation of a foreclosure proceeding in the context of NRS § 116.3116(6) rather than NRS § 116.3116(2), the court noted that its decision was consistent with the court's decision in *SFR Investments Pool 1 v. U.S. Bank*, 334 P.3d 408, 411 (2014) ("*SFR I*"). *Id.* There, the court stated that "[t]o initiate foreclosure under NRS 116.31162 through NRS 116.31168, a Nevada HOA must notify the owner of the delinquent assessments." *SFR I*, 334 P.3d at 411. Here, the Borrowers first became delinquent in April 2008 (ECF No. 134 at 13 (citing ECF No. 120-10 at 10)), and the HOA recorded its notice of delinquent assessment lien in October 2008 (*Id.* (citing ECF No. 120-5 at 2)). Thus, Nationstar appears to be correct that the superpriority portion of the lien here comprised only seven months of delinquent assessments.

Accordingly, the Court finds that SFR has failed to offer sufficient evidence to create a genuine issue of material fact that the amount of BANA's tender was insufficient to discharge the superpriority portion of the HOA's lien.

**D.    Conditions**

SFR argues that the Second Letter impermissibly conditioned the tender on the HOA's waiver of payment for nuisance abatement charges. (ECF No. 128 at 13-14.) Nationstar argues that the Second Letter is exactly the same as the letter the Nevada Supreme Court reviewed in *Bank of America*, 427 P.3d 113. (ECF No. 134 at 13-14.) There, the court considered whether a letter offering to tender imposed impermissible conditions when it required the HOA to potentially accept less than the full superpriority amount. *Bank of America*, 427 P.3d at 118. While the letter at issue in that case stated that acceptance of the tender would satisfy the superpriority portion of the lien, the court found that the lender had a legal right to insist on such a condition and that it did not invalidate the tender. *Id.* Nationstar further argues that the Second Letter did not in fact require the HOA to waive anything because the Borrower paid the maintenance and nuisance abatement charges that pre-dates BANA's tender. (ECF No. 134 at 14.) Nationstar also argues that NAS's rejection of the tender was based on the condition that the tender would constitute payment in full for the superpriority amount—not waiver of the superpriority status of nuisance abatement charges. (*Id.*)

The Court agrees with Nationstar. The Nevada Supreme Court found that a similar letter offering to tender was sufficient to discharge the superpriority portion of the HOA lien in *Bank of America*, 427 P.3d 113. The HOA would not have been required to actually waive anything in this case, and NAS's rejection had nothing to do with the superpriority status of nuisance abatement charges. And while SFR argues that the Second Letter would have required the HOA to waive future nuisance abatement charges (ECF No. 128 at 14), the Second Letter would have had no such effect. If the Borrowers incurred additional nuisance abatement charges after BANA tendered, the HOA would have been required to record a new notice of delinquent assessment. *See Saticoy Bay LLC Series*

1    *6212 Lumber River v. Bank of Am., N.A.*, 430 P.3d 531, 2018 WL 6133938, at *1 n.1 (Nev.

2    2018) (citing *Property Plus Invs., LLC v. Mortg. Elec. Registration Sys.*, 401 P.3d 728,

3    731-32 (Nev. 2017)) ("For the HOA to foreclose on a lien consisting of unpaid assessments

4    that accrued after Bank of America satisfied the previous lien, the HOA needed to issue a

5    new notice of delinquent assessment and notice of default.").

6            Accordingly, the Court will grant summary judgment in favor of Nationstar.

7    **V.      SFR'S MOTION TO STRIKE THE AMENDED COMPLAINT (ECF NO. 113)**

8            SFR moves to strike Nationstar's FAC, arguing that Nationstar was permitted to

9    amend only its allegations regarding diversity but nevertheless made revisions related to

10   the amount in controversy; federal questions subject matter jurisdiction; fair market value

11   of the Property; alleged fraud, oppression, or unfairness in the HOA Sale; and an as-

12   applied due process challenge. (ECF No. 113 at 5.) The Court finds that SFR's motion is

13   moot because none of these alleged alterations in the FAC relate to tender—the

14   dispositive issue in this case. Accordingly, the Court will deny SFR's motion to strike the

15   FAC as moot.

16
     **VI.     SFR'S MOTION TO STRIKE NATIONSTAR'S MOTION FOR PARTIAL
17           SUMMARY JUDGMENT (ECF NO. 127)**

18           SFR argues that Nationstar's motion for partial summary judgment should be

19   stricken because Exhibits N, P, Q, R, S, and T attached to Nationstar's motion were never

20   produced or disclosed. (ECF No. 127 at 2.) Given that the Court did not rely on any of

21   these exhibits, the Court will deny SFR's motion as moot.

22   **VII.    CONCLUSION**

23           The Court notes that the parties made several arguments and cited to several cases

24   not discussed above. The Court has reviewed these arguments and cases and determines

25   that they do not warrant discussion as they do not affect the outcome of the motions before

26   the Court.

27   ///

28   ///

It is therefore ordered that Plaintiff Nationstar's motion for partial summary judgment (ECF No. 120) is granted. The Court declares that the HOA Sale did not extinguish Nationstar's DOT. Nationstar's remaining claims are dismissed as moot.

It is further ordered that the following motions are denied as moot: SFR's motion to strike amended complaint (ECF No. 113); SFR's motion for summary judgment (ECF No. 114); and SFR's motion to strike Nationstar's motion for partial summary judgment (ECF No. 127).

It is further ordered that the Clerk of the Court enter judgment in favor of Nationstar on its first claim for relief—quiet title/declaratory judgment—and close this case.

DATED THIS 12th day of March 2019.

MIRANDA M. DU
UNITED STATES DISTRICT JUDGE